**Lorraine G. GRACE, Individually and as Executrix of the Estate of Oliver R. Grace, Gerald I. White, Trustee U/W Morgan H. Grace, for the Marital Deduction Trust, Gerald I. White, Trustee U/W Morgan H. Grace for the**

---

Non–Marital Deduction Trust and Gerald I. White, Trustee U/W Morgan H. Grace for the Generation Skipping Trust and Gerald I. White, Trustee of the John E. Grace Trust, individually and as stockholders of Briggs Leasing Corp., suing on behalf of themselves and for the benefit of said corporation and for the class of all other stockholders of said corporation similarly situated, Plaintiffs–Appellants,

v.

BANK LEUMI TRUST COMPANY OF NEW YORK, David Mack, the Estate of Leo V. Berger, Apex Marine Corp., Harvey Schwartz, Phyllis Sepe and Sigmund Kassap, Trustee of the Leo V. Berger Grantor Trust No. 1 as Personal Representative of the Estate of Leo V. Berger, Non–Party Movants–Defendants–Appellees,

Robert Rosenstock, Robert Genser, Edward Rosenstock, Briggs Leasing Corporation and Briggs Acquisition Corporation, Defendants.

Docket Nos. 04–5824–CV(L), 04–5840(CON), 04–5842–CV(CON).

United States Court of Appeals, Second Circuit.

Argued: Sept. 12, 2005.

Decided: April 4, 2006.

Sidney Bender and Risa Bender, Leventritt Lewittes & Bender, New York, NY, for Plaintiffs–Appellants.

Robert Fryd and Donna Levinsohn, Warshaw Burstein Cohen Schlesinger & Kuh, LLP, New York, NY, for Non–Party Movant–Defendant–Appellee Bank Leumi Trust Company of New York.

David T. Azrin and Harvey Schwartz, Gallet Dreyer & Berkey, LLP, New York, NY, for Non–Party Movants–Defendants–Appellees David Mack, the Estate of Leo V. Berger, Apex Marine Corp., Harvey Schwartz, Phyllis Sepe and Sigmund Kassap, Trustee of the Leo V. Berger Grantor Trust No. 1 as Personal Representative of the Estate of Leo V. Berger.

CARDAMONE, CABRANES, and POOLER, Circuit Judges.

POOLER, Circuit Judge.

Three appeals have been consolidated in this case. On July 3, 1985, plaintiffs-appellants ("plaintiffs") commenced a federal

action, against Briggs Leasing Corporation ("Briggs"), Briggs Acquisition Corporation ("BAC"), and individual defendants, in which plaintiffs asserted individual, class, and derivative claims for "equitable and other relief." On March 17, 1994, the United States District Court for the Eastern District of New York (Johnson, J.), entered a default judgment against Briggs. A trial against defendant Robert Rosenstock and an inquest to fix damages against Briggs were scheduled to begin in August 1997. On July 31, 1997, plaintiffs and Robert Rosenstock entered into a stipulation of settlement against Briggs and Robert Rosenstock. On August 5, 1997, the United States District Court for the Eastern District of New York (Trager, J.) approved the stipulation by order and directed the clerk to enter a final judgment, which the clerk did against Briggs on August 15, 1997.

In 2002, plaintiffs brought fraudulent conveyance actions in the United States District Court for the Southern District of New York, against non-party movants-defendants-appellees ("movants"), under New York Debtor and Creditor Laws ("DCL"), predicated upon the August 15, 1997, judgment against Briggs. In late 2002, movants initiated proceedings to vacate plaintiffs' judgment against Briggs under Rules 60(b)(4) and 60(b)(6) of the Federal Rules of Civil Procedure.

The district court (Trager, J.) granted movants' motion to vacate. *Grace v. Rosenstock*, No. 85–cv–2039 (E.D.N.Y. Oct. 4, 2004). The district court also dismissed the fraudulent conveyance actions, because without an uncollected judgment as a predicate, there could be no cause of action for fraudulent conveyances. *Grace v. Bank Leumi*, No. 04–cv–0708 (E.D.N.Y. Oct. 6, 2004); *Grace v. Schwartz*, No. 04–cv–1622 (E.D.N.Y. Oct. 14, 2004).

We affirm.

## Background

Prior to 1985, Briggs was a publicly-held auto-leasing company incorporated in New York. Robert Rosenstock, his father Edward Rosenstock, and Robert Genser ("Genser") were officers and directors of Briggs and owned, respectively, approximately 64 percent, 3 percent, and 5 percent of its outstanding stock. In January 1985, Robert Rosenstock and Genser decided to take Briggs private in a freeze-out merger.[1] They incorporated BAC and planned to merge BAC and Briggs, buy out Briggs's minority shareholders, and make Briggs the surviving corporation. Rosenstock and Genser contributed all of their Briggs shares to BAC. Rosenstock purchased his father's shares of Briggs stock and contributed them to BAC. As a result, BAC owned 72 percent of the stock of Briggs, with Rosenstock and Genser owning all of the stock of BAC.

Briggs outlined a plan for a merger with BAC in a January 1985 proxy statement to its shareholders. All shareholders would be bought out at $1.50 per share. Eighty-six percent of the minority shareholders, including named plaintiffs, filed notices of election to dissent. A February 1985 special meeting approved the merger based solely on BAC's vote. At the meeting, plaintiffs voted their shares against the merger. The merger was nevertheless consummated on February 26, 1985, when Rosenstock and Genser became the sole holders of Briggs shares, owning approximately 93 percent and 7 percent, respectively.

---

1. Under New York's Business Corporation Law ("BCL"), a merger may be authorized by the affirmative vote of two-thirds of the corporation's shares. *See* N.Y. BCL § 903(a)(2) (McKinney 2006).

On May 20, 1985, plaintiffs brought an appraisal action against Briggs in the Supreme Court of the State of New York, Nassau County, to fix the fair value of their shares as dissenting shareholders.[2] Briggs answered this action through counsel on July 23, 1985. Plaintiffs also notified the state court of their intention to file a federal action and requested that their appraisal action be held in abeyance pending the final determination of their case in federal court. The state court did so on October 7, 1985. Plaintiffs then commenced a federal action, asserting individual, class, and derivative claims for "equitable and other relief," in an amended complaint dated July 1, 1985. They named Robert Rosenstock, Genser, Edward Rosenstock, Briggs, and BAC as defendants. They alleged, *inter alia*, violations of the Securities Exchange Act of 1934, the New York Business Corporation Law ("BCL"), and fiduciary duties. They also brought derivative actions on behalf of Briggs against Robert Rosenstock, Genser, and Edward Rosenstock, for allegedly using corporate funds for personal expenses and diverting corporate opportunities to competing companies they owned. They requested that the class action be certified, the merger be set aside, the terms of the merger be reformed, the defendants "account for the damages suffered by Briggs and the profits and benefits enjoyed by the individual defendants by reason of [their wrongful conduct]," and the court give "such other, further, and different relief as may be just, including damages, together with costs, disbursements and a reasonable fee for plaintiffs' attorneys." Defendants

Robert Rosenstock, Genser, and Edward Rosenstock answered this complaint on July 22, 1985, and Briggs answered separately, also on July 22, 1985. Briggs and the individual defendants were represented by different attorneys.

In an August 14, 1986, memorandum and order, the district court (Costantino, *J.*) granted plaintiffs' motion for class certification. *Grace v. Rosenstock*, No. cv–85–2039 (E.D.N.Y. Aug. 14, 1986) ("Grace I").[3] In January 1988, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey ("Finley Kumble"), the law firm that represented Briggs, declared bankruptcy, leaving Briggs without legal representation. Michael Rosen, the attorney for the individual defendants, determined that Briggs and his clients had a conflict of interest, and he could therefore not represent Briggs. Briggs did not appear by counsel for the next five years. Meanwhile, on January 19, 1989, an order of discontinuance was entered by the United States District Court for the Eastern District of New York (Costantino, *J.*), because the court received a report stating that the action had been settled. *Grace v. Rosenstock*, No. 85–cv–2039 (E.D.N.Y. Jan. 19, 1989) ("Grace II"). In fact, *Halperin v. Rosenstock*, No. 85–cv–1258, an action brought by Robert Rosenstock's sister and brother-in-law (also Briggs minority shareholders), had settled. This settlement inadvertently led Judge Costantino to close *Grace I*.

Four years later, on March 1, 1993, plaintiffs moved to set aside the order of discontinuance and reopen *Grace I*. On

---

**2.** This action was brought under New York's BCL. *See* N.Y. BCL § 623(h)(1) (McKinney 2006). The named plaintiffs owned approximately 1.25 percent of Briggs stock prior to the merger, and the class owned about 14 percent, roughly equivalent to 83,402 shares.

**3.** Because of the long and complex procedural history in this case, each of the federal court decisions has been assigned, in chronological order, a roman numeral for the purposes of this opinion. For ease of reference we attach an appendix identifying Grace I through XIII.

March 24, 1993, an order from the United States District Court for the Eastern District of New York (Raggi, *J.*) held that *Grace I* had been closed in error and reopened it. *Grace v. Rosenstock*, No. cv–85–2354 (E.D.N.Y. Mar. 29, 1993) ("Grace III"). Plaintiffs then moved for a default judgment against Briggs and BAC on the issue of liability, and for an inquest after discovery to determine the amount of damages to be included in the judgment. Michael Rosen filed a motion to withdraw as counsel for defendants in June 1993. Genser obtained new counsel. Briggs and Rosenstock did not obtain new counsel. In 1993, pursuant to Rule 55 of the Federal Rules of Civil Procedure, default judgments were entered against Briggs and BAC, as neither corporation was represented by counsel. *Grace v. Rosenstock*, No. 85–cv–2039 (E.D.N.Y. June 8, 1993) ("Grace IV").

Almost two-and-one-half years later, in January 1996, plaintiffs moved for leave to amend the complaint, which had been filed nearly nine years earlier, to assert additional claims against the defendants and add additional defendants, including nonparty movants. Plaintiffs wanted to set aside as void the allegedly fraudulent transfers to Bank Leumi, David Mack, Leo V. Berger, and Apex Marine Corporation. Plaintiffs alleged that Briggs executed promissory notes and mortgages on real property in favor of Berger and Mack, in exchange for loans. Neither party disputed that Berger and Mack paid out and loaned the full amount, but plaintiffs alleged that pursuant to Robert Rosenstock's and Genser's instructions, Berger and Mack disbursed some of the money in the loans to Rosenstock and Genser individually. The district court (Levy, *M.J.*) issued a memorandum and order on September 30, 1996, which denied permission to add new defendants and assert new claims. *See Grace v. Rosenstock*, 169 F.R.D. 473, 480–86 (E.D.N.Y.1996) ("Grace V"). Judge Levy reasoned that the new claims did not relate back to the original complaint, in part because they set forth "a completely new set of operational facts." *Id.* at 481. Judge Levy also denied plaintiffs' arguments on equitable tolling and equitable estoppel, explaining, "although plaintiffs complain that they did not learn of the alleged fraudulent conveyances until late 1995, they clearly could have learned of the note and mortgage transactions earlier had they been more diligent in noticing depositions or seeking court intervention regarding discovery." *Id.* at 484.

Judge Trager affirmed Judge Levy's order in its entirety, *Grace v. Rosenstock*, No. 85–cv–2039 (E.D.N.Y. Nov. 7, 1996) ("Grace VI"), and on February 28, 1997, plaintiffs were denied leave to take an interlocutory appeal. On July 28, 1997, the parties attended a status conference before the district court (Wolle, *J.*). According to plaintiffs, "the only parties that were then appearing before Judge Wolle were the party of plaintiffs, plaintiff [*sic* ] Rosenstock, *pro se* and Briggs Leasing by Mr. Rosenstock." Plaintiffs entered into a stipulation of settlement dated July 31, 1997, as to their claims against defendants Robert Rosenstock and Briggs. Rosenstock, who according to plaintiffs was judgment-proof, executed the stipulation on behalf of himself for $6,912,288, and on behalf of Briggs for $4,028,000. Neither Rosenstock nor Briggs had legal representation. Judge Trager entered a judgment for these amounts against both Rosenstock and Briggs. *Grace v. Rosenstock*, No. 85–cv–2039 (E.D.N.Y. Aug. 15, 1997) ("Grace VII"). The judgment declared as moot the state court proceedings against both Rosenstock and Briggs. *Id.*

After entry of the 1997 judgment, plaintiffs and Genser consented to have all further proceedings, including entry of any

judgment, conducted by a magistrate judge. The matter was referred to Magistrate Judge Levy. Following a bench trial, Judge Levy dismissed the claims against Genser in their entirety. *See Grace v. Rosenstock*, 23 F.Supp.2d 326, 337 (E.D.N.Y. Oct.29, 1998) ("Grace VIII"). Plaintiffs appealed from the dismissal of their claims and we affirmed the judgment on August 25, 2000. *See Grace v. Rosenstock*, 228 F.3d 40 (2d Cir.2000) ("Grace IX"). In that case, we affirmed, *inter alia,* the order denying leave to add claims and parties, issued by Judge Levy in *Grace V;* the order dismissing plaintiffs' claims against Genser, issued by Judge Levy in *Grace VIII;* and Judge Levy's denial of other arguments advanced by plaintiffs, including equitable estoppel and equitable tolling. *Id.* at 52–55.[4]

According to plaintiffs, writs of execution against Briggs and Rosenstock were returned unsatisfied. In August 2002, plaintiffs commenced separate actions in the Southern District of New York against Briggs and movants, using the unsatisfied 1997 judgment as a predicate to bringing fraudulent conveyance claims against movants, under Section 273–a of DCL. *See* N.Y. CLS Dr & Cr § 273 (2006). Plaintiffs alleged that notes, guarantees, and mortgages on real property of Briggs, given to movants between 1986 and 1989, were made without fair consideration.[5] Plaintiffs argued that movants helped Robert Rosenstock loot the corporation by giving the loans directly to Robert Rosenstock and other companies he owned.

On February 13, 2004, the first fraudulent conveyance action was transferred from the United Stated District Court for the Southern District of New York (Berman, *J.*), to the United Stated District Court for the Eastern District of New York. *Grace v. Bank Leumi Trust Co.*, No. 02–cv–6612(S.D.N.Y. Mar. 30, 2004), 2004 U.S. Dist. LEXIS 5294 at *6 ("Grace X"). This had the effect of transferring the second action for fraudulent conveyance. *Id.* at *17. Judge Berman reasoned that the proper venue was the Eastern District, the alleged fraudulent conveyances involved real property located in the Eastern District, the transfer promoted efficiency, and plaintiffs' choice of forum was entitled to little weight. He also called the plaintiffs' choice of forum an attempt at "judge shopping." *Id.* at *13.

In October 2002, movants had written to Judge Trager to request a pre-motion conference, explaining that they intended to file a motion to vacate the 1997 judgment. In 2003, movants filed motions to vacate. The district court then issued a memorandum and order, which addressed movants' arguments for vacating the judgment. *Grace v. Rosenstock*, No. 85–cv–2039 (E.D.N.Y. Oct. 4, 2004) ("Grace XI"). These reasons included the following: (1) Briggs was not represented by counsel when the settlement was entered; (2) Robert Rosenstock lacked power to confess judgment against Briggs; (3) the amount of the default judgment against Briggs exceeded the relief sought against Briggs in the original complaint; and (4) the class was not notified of the settlement and a fairness hearing was not held. *See id.* at 9.

---

**4.** Although we did concede that the limitations period had not yet begun to run as to the DCL § 273–a claims, we nonetheless did not reverse because the plaintiffs were found to have waived their nonaccrual objection to the magistrate judge's ruling. *Grace IX,* 228 F.3d at 54.

**5.** Although movants did receive proceeds of real estate sales made by Briggs, these payments were allegedly millions of dollars less than the amounts they had loaned.

Judge Trager vacated the 1997 judgment as void under Rule 60(b) of the Federal Rules of Civil Procedure. He explained that it is well-settled law that a corporation may appear in the federal courts only through licensed counsel; damages for a default judgment should not be awarded without a hearing or a demonstration by affidavits establishing the facts; no inquest was held because the stipulation was the basis for entry of judgment against Briggs; rescissory damages are not available for freeze-out mergers; the amount was both excessive and different in kind from that sought in the complaint; and there was evidence of collusion between Rosenstock and plaintiffs to the detriment of movants. *Grace XI*, at 9–20. Judge Trager concluded, "[i]n any event, movants should not be required to suffer further legal costs to bring a summary judgment motion, while plaintiffs press forward with a 19–year–old litigation fraught with procedural errors and excessive, if not completely meritless, claims." [6] *Id.* at 20. He then dismissed the two fraudulent conveyance actions, because there was no longer a judgment on which to collect. *Grace v. Bank Leumi*, No. 04–cv–0708 (E.D.N.Y. Oct. 6, 2004) ("Grace

XII"); *Grace v. Schwartz*, No. 04–cv–1622 (E.D.N.Y. Oct. 14, 2004) ("Grace XIII").

Plaintiffs filed an appeal to this Court on November 1, 2004.

## *Discussion*

### I. Jurisdiction

We have jurisdiction over the appeals of *Grace XI*, *Grace XII*, and *Grace XIII* based on 28 U.S.C. § 1291, the notices of appeal having been filed on November 1, 2004. The district court had jurisdiction over *Grace XI* under 28 U.S.C. § 1331, as it was an action arising under federal law. Jurisdiction in *Grace XII* and *Grace XIII* was based on Rule 69 of the Federal Rules of Civil Procedure, because they concerned the collection of a federal judgment. *See Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 107 (2d Cir.2001); Fed.R.Civ.P. 69.

### II. Standard of Review

■ Federal Rule of Civil Procedure 60(b) decisions by district courts are accorded deference. We reverse only where there has been an abuse of discretion. *See Lawrence v. Wink (In re Lawrence)*, 293 F.3d 615, 623 (2d Cir.2002); *Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir.1986).[7]

---

**6.** Although the merits of this case were not an issue, Judge Trager nevertheless noted that "even if the Judgment were upheld, plaintiffs would probably not survive a motion for summary judgment," *Grace XI*, at 19. He explained that he was skeptical that Bank Leumi did not give fair consideration for the mortgages. *Id.* at 20. He wrote that if Briggs was not a defendant in an action for money damages when the conveyances were made, DCL § 273–a did not apply and therefore the judgment could not affect movants. And he found that the transfers to Mack, Berger, and Apex occurred while this action was administratively closed. *Id.* Therefore, if they had checked the court documents (which movants said they did), they would have found that the case was administratively closed because of a pending settlement. *Id.*

**7.** When we recognized in *Central Vermont Public Service Corp. v. Herbert*, 341 F.3d 186 (2d Cir.2003), that "[a]lmost every Circuit has adopted *de novo* review of Rule 60(b)(4) motions, and we know of no Circuit that defers to the district court on a Rule 60(b)(4) ruling," we were referring to a district court judgment *refusing* to find a judgment void. The language that *de novo* review is appropriate for Rule 60(b) motions has not been adopted in this Circuit. As we explained in *Lawrence*, "deferential abuse of discretion review of a district court's Rule 60(b) decisions reflects both the proximity of a district court to the facts of a case and the fact that a district court typically is being asked under Rule 60(b) to revisit its own final order or decision." 293 F.3d at 623.

### III. Standing

Rule 60(b) states, in part, that a "court may relieve a party or a party's legal representative from a final judgment, order, or proceeding . . . ." Fed.R.Civ.P. 60(b). Here, movants are neither parties nor a party's legal representatives. However, we observed in *Lawrence*, 293 F.3d at 627 n. 11:

> several circuit courts have permitted a non-party to bring a Rule 60(b) motion or a direct appeal when its interests are strongly affected, and we have permitted such a motion on at least one occasion. *See Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044, 1052 (2d Cir.1982) (non-party plaintiffs had standing to invoke Rule 60(b)(6) to amend a federal judgment, where they were "sufficiently connected and identified with the . . . suit").

(alternation in original). In *Dunlop*, movants were precluded from bringing an age discrimination action because of a prior judgment to which they were not a party, but which nonetheless restricted their litigation options. We held that "on the facts of this case appellants were sufficiently connected and identified with the Secretary's suit to entitle them to standing to invoke Rule 60(b)(6)." 672 F.2d at 1052. While we limited our holding in *Dunlop* to the facts of that case, which are clearly distinguishable from the facts here, we rested our decision on "the principles governing standing," which, given the facts of *Dunlop*, were "sufficiently flexible to permit a finding of standing." *Id.* at 1051.

■ Finding that movants here were "sufficiently connected and identified with" the 1997 settlement is also in keeping with the principles governing standing. *See Dunlop*, 672 F.2d at 1052. Both plaintiffs and movants concur that the purpose of the 1997 stipulation was to collect money from movants. Plaintiffs argue that they laid out their strategy to obtain a judgment against Briggs in order to pursue collection of that judgment by recapturing the fraudulent conveyances from movants. This is evidenced not only by their own admissions, but also by the fact that Briggs was judgment-proof and not represented by counsel at the time of the 1993 default judgment on liability.

■ Today, as in *Dunlop*, we limit our decision to the facts of this case, and hold that where plaintiffs enter into a settlement agreement with a judgment-proof, *pro se* defendant with the intent at the time of the settlement to collect from a third party that allegedly received fraudulent conveyances, and further, they attempt to use the judgment as a predicate for a fraudulent conveyance action against the third party, the third party is "strongly affected" by the judgment and entitled to standing to bring a Rule 60(b) motion. *See Lawrence*, 293 F.3d at 627 n. 11. This decision does not mean that similarly situated plaintiffs must automatically defend their judgments from third-party transferees. Rather, if a plaintiff holds a judgment on liability against a judgment-proof *pro se* defendant and hopes to use the judgment as a predicate for a fraudulent conveyance claim, she need only carry out a judicially supervised inquest to protect her judgment.

■ To prevail on a claim under DCL § 273–a, a plaintiff must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment. *See* N.Y. CLS Dr & Cr § 273a. It is not the judgment itself that plaintiffs collect from transferees. Therefore, the unsatisfied judgment, while a necessary predicate to bringing a DCL § 273–a case,

is not a sword that can be directly turned upon third-party transferees. The proper remedy in a fraudulent conveyance claim is to rescind, or set aside, the allegedly fraudulent transfer, and cause the transferee to return the transferred property to the transferor. *Geren v. Quantum Chem. Corp.*, 832 F.Supp. 728, 736–37 (S.D.N.Y. 1993). The "purpose of such an action is to force the debtor to recover property transferred for inadequate consideration so that the property can be used to satisfy the debt owed to the creditor." *Id.* at 736. The creditor's remedy is "limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance, and requiring that it be restored to the debtor's possession." *Id.* (internal quotations and citations omitted).

One underlying purpose of DCL § 273–a —— to prevent defendants from liquidating their assets in contemplation of an adverse judgment —— would be undermined if third parties could routinely attack judgments to which they were not a party. It could add additional and potentially onerous steps to plaintiffs' litigation before they could collect on a judgment. For instance, in a hypothetical multi-plaintiff lawsuit in which defendants are judgment-proof, some plaintiffs might pursue DCL § 273–a claims against a third-party transferee. If the hypothetical plaintiffs' judgment were vacated under Rule 60(b), a possible due process violation could be visited upon the absent plaintiffs. Here, as Judge Trager correctly acknowledged, the judgment has no res judicata or collateral estoppel effect on movants. It does, however, have res judicata effects on any plaintiffs or class members who are not a party to the fraudulent conveyance lawsuit.

In this case, however, there is a strong possibility that the predicate judgment that forms the basis of this fraudulent conveyance action is the result of a settlement process devoid of due process protections and marred by serious procedural shortcomings. There is the appearance that plaintiffs and defendants entered settlement negotiations with the mutual intent of laying the burden of compensating plaintiffs squarely on non-party movants. Should the fraudulent conveyance claims be heard on the merits, the trial court could choose not to look behind the judgment for any improprieties. We thus carve out an exceedingly narrow exception to the well-established rule that litigants, who were neither a party, nor a party's legal representative to a judgment, lack standing to question a judgment under Rule 60(b).

## IV. Timeliness

This Circuit will not examine the merits of a judgment if the motion to set it aside was untimely. *See State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 179 (2d Cir.2004). As Judge Trager explained, Rule 60(b) motions brought pursuant to (b)(1), (b)(2), or (b)(3) must be made not more than one year after the entry of judgment. *Grace XI*, at 10; *accord* Fed.R.Civ.P. 60(b). Movants could not seek to vacate it under these first three clauses and therefore do not allege or argue mistake, newly discovered evidence, fraud, or misrepresentation. They instead rely on Rule 60(b)(4), "the judgment is void," and Rule 60(b)(6), "any other reason justifying relief from the operation of the judgment," which do not have a one-year time limit. *See* Fed. R.Civ.P. 60(b).

■ Plaintiffs argue that movants' Rule 60(b) motion is approximately nine years too late, because their 1997 collateral attack on the appeal to the Second Circuit demonstrates they could have made this motion then. Plaintiffs' Br. at 49. Putting

aside for a moment the fact that this subverts plaintiffs' opposition to movants' standing, plaintiffs also contend that movants resisted being made parties to this suit, deliberately decided not to cross-appeal from the 1998 final order, and deliberately chose to wait for over five years before bringing a Rule 60(b) motion. Plaintiffs' Br. at 40. Plaintiffs argue that movants should have paid greater attention to a January 30, 1997, letter, from plaintiffs to Judge Trager, which argued, *inter alia,* that under controlling Second Circuit authorities, the statute of limitations for DCL § 273–a transfers in fraud of creditors does not begin to run until the defendants fail to satisfy the judgment; that plaintiffs would go to trial to obtain a judgment that was allegedly worthless because Briggs was only an empty shell; and that the mortgages were not issued for fair consideration and were therefore fraudulent. *See* Plaintiffs' Br. at 41–42. Therefore, plaintiffs argue that they "clearly laid out their strategy to obtain a judgment against Briggs in order to pursue collection of that judgment by recapturing the fraudulent conveyances from the transferees—here, Bank Leumi, Mack, Berger and Apex Marine Corp." Plaintiffs' Br. at 43.

Movants collaterally attacked the 1997 judgment during plaintiffs' appeal. They did so to avoid being joined as defendants in this litigation. They were not parties to this case, money was not being collected from them, and they chose this strategy among the several legal options available to them. And, they were successful. The district court agreed with their collateral attack, and they successfully avoided being joined as defendants. *See Grace V.* Further, the courts below, and this Court on appeal, uniformly denied plaintiffs' attempts to bring fraudulent conveyance actions against movants. *See Grace V; Grace VI; Grace IX.* Therefore, it would have been a self-defeating act if movants (having been kept out of litigation) had injected themselves in the case in order to attack a judgment that did not then affect them.

A Rule 60(b)(4) motion must be made "within a reasonable time" after entry of the judgment. Fed.R.Civ.P. 60(b). "Courts have been exceedingly lenient in defining the term 'reasonable time,' with regard to voidness challenges. In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void 'may be made at any time.'" *State St. Bank,* 374 F.3d at 179 (quoting *Beller & Keller v. Tyler,* 120 F.3d 21, 24 (2d Cir.1997)). In our decision in *Central Vermont Public Service Corp.,* the Rule 60(b) motion was not untimely although the movant had waited more than four years to bring its motion, and did so when "prompted by a suit ...." 341 F.3d at 188, 189. We held in *State Street Bank,* "where a party has previously filed a motion to vacate a default judgment that failed to raise a voidness argument and subsequently advances such an argument in a Rule 60(b)(4) motion more than a year after the entry of the default judgment, the Rule 60(b)(4) motion should be denied as untimely." 374 F.3d at 179.[8]

---

**8.** Rule 60(b)(6) does not have a one year limit, but instead requires that the motion must be made within a "reasonable time." Fed. R.Civ.P. 60(b)(6). To determine the timeliness of a motion brought pursuant to Rule 60(b)(6), we look at the particular circumstance of each case and "balance the interest in finality with the reasons for delay." *Kot-*

*licky v. United States Fidelity & Guar. Co.,* 817 F.2d 6, 9 (2d Cir.1987). Notably, a Rule 60(b)(6) motion requires "extraordinary circumstances," which "typically do not exist where the applicant fails to move for relief promptly." 12 MOORE'S FEDERAL PRACTICE § 60.48[3][c]; *Transaero, Inc. v. La Fuerza Area Boliviana,* 24 F.3d 457, 462 (2d Cir.

Judge Trager distinguished the movants here from those in *Beller & Keller,* as the movants here had not filed any previous appeal or motion to vacate. He reasoned:

> Regardless of whether or not they theoretically had the option of doing so, they have provided a simple explanation for their actions: they waited until plaintiffs had actually sued them under DCL § 273–a. Taking into account this lenient standard, the motion was filed within a reasonable time, namely, shortly after the commencement of [the 2004 actions for fraudulent conveyances].

*Grace XI,* at 10. Judge Trager's observation was especially appropriate considering that the allegedly fraudulent transactions occurred nearly fifteen years earlier.

In a typical case, five years from the judgment to a Rule 60(b) motion would be considered too long by many courts. This case, however, is anything but typical. Plaintiffs created significant delay by bringing a fraudulent conveyance claim more than fifteen years after the conveyances were alleged to have been made, and five years after the judgment that they could not satisfy. Plaintiffs' argument that movants have waited too long, when movants brought this motion only weeks after plaintiffs filed this lawsuit, is unpersuasive. In this case, we are interested less in the number of years from the time of judgment, than we are in what has happened in between. It was well within Judge Trager's discretion to determine that the Rule 60(b) motion was timely, because being directly sued provides "good cause."

## V. The Judgment is void under Rule 60(b)(4)

■ Movants contend that the judgment here is void for several reasons: (a) the default judgment was entered without any evidentiary hearings, detailed affidavits, or documentary evidence having been presented to the district court; (b) a corporation cannot appear *pro se* in federal court; (c) there were material conflicts of interest between the corporate officers negotiating the settlement agreement and the corporation itself; and (d) the judgment was in violation of Rule 54(c) of the Federal Rules of Civil Procedure because plaintiffs obtained relief in excess and different in kind from that sought in their complaint.

Plaintiffs cite *Cablevision Systems New York City Corp. v. Lokshin,* 980 F.Supp. 107, 112 (E.D.N.Y.1997), for the proposition that a district court has the discretion to determine the amount of damages to be included in a default judgment by an evidentiary hearing, detailed affidavits, or documentary evidence. This is true, yet here, there were none of the above: no evidentiary hearings, no detailed affidavits, and no documentary evidence. This was because the parties settled. Plaintiffs enumerate many items that would have been included in these hearings had they taken place. In fact, plaintiffs assert that the reason that Rosenstock settled on behalf of Briggs was because plaintiffs previewed for Rosenstock the overwhelming evidence that would be used in the inquest. However, the record indicates that Judge Wolle never held an evidentiary hearing, received detailed affidavits, or considered documentary evidence. Judge Wolle held a status conference on July 28,

---

1994). Moore's Federal Practice does not define "promptly," instead it cites *Transaero,* which holds, "[n]or, in the circumstances of this case, does the fact that BAF did not learn of the entry of the default judgment for several years constitute 'extraordinary circum-

stances' justifying Rule 60(b)(6) relief." *Id.* at 462. Because we later decline to rule on the district court's granting of the Rule 60(b)(6) motion, we do not decide whether the Rule 60(b)(6) motion was timely.

1997, in which plaintiffs' counsel appeared in person and Rosenstock appeared by telephone from Florida. On July 31, 1997, an order from Judge Wolle urged the parties to continue settlement negotiations and imposed a deadline of August 4, 1997. Plaintiffs and Rosenstock then signed the stipulation of settlement, with Rosenstock acting on behalf of Briggs and himself.

Judge Trager wrote that it is "well-settled" that a " 'corporation may appear in the federal courts only through licensed counsel.' " *Grace XI,* at 12 (quoting *Rowland v. California Men's Colony,* 506 U.S. 194, 201–02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993)). Judge Trager, citing *Mullin–Johnson Co. v. Penn Mutual Life Insurance Co.,* 9 F.Supp. 175 (N.D.Cal.1934), explained that this rule "has been applied to dismiss any action or motion filed by a corporation purporting to · act *pro se.*" *Grace XI,* at 12. He also found that "[a] corporation cannot execute a stipulation of settlement while appearing *pro se* in a federal court." *Id.* at 13.

■ Judge Trager is correct. This Court held in *SEC v. Research Automation Corp.,* 521 F.2d 585 (2d Cir.1975), that "[i]t is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55, F[ed]. R. Civ. P." *Id.* at 589 (internal citation omitted); *accord Jacobs v. Patent Enforcement Fund, Inc.,* 230 F.3d 565, 568 (2d Cir.2000). Further, this Court held in *Eagle Associates v. Bank of Montreal,* 926 F.2d 1305 (2d Cir.1991), that "we long have required corporations to appear through a special agent, the licensed attorney." *Id.* at 1308.

Plaintiffs attempt to invoke *Schifrin v. Chenille Manufacturing Co.,* 117 F.2d 92 (2d Cir.1941), arguing that even if Briggs

retained an attorney, this attorney would have "merely carried out an agreement" made by defendant Rosenstock. In distinguishing this case, Judge Trager explained one of the justifications for requiring that corporations be represented by counsel: "the 'lay litigant' lacks many of the attorney's ethical responsibilities." *Grace XI,* at 13 (quoting *Jones v. Niagara Frontier Transp. Auth.,* 722 F.2d 20, 22 (2d Cir. 1983)). Attorneys do not exist merely to act as information conduits or to communicate with opposing counsel. Rather, they inform, advise, counsel, explain matters of law, and do much more. It is impossible to know what role an attorney for Briggs would have played, but it is likely that she would have played some role in the negotiation beyond simply passing along information to plaintiffs, especially considering that Rosenstock and Briggs had conflicting interests. Plaintiffs argue that it is "fundamentally unfair" to leave them without a remedy, but plaintiffs brought this situation upon themselves by negotiating an extraordinarily high settlement by telephone with a bankrupt *pro se* defendant who spoke for a bankrupt corporate shell that lacked legal counsel. Even the sole shareholder of a corporation is differently situated legally from the corporation, whose interests " 'frequently overlap but are not identical in all respects.' " *Grace XI,* at 13 (quoting *Batac Dev. Corp. v. B & R Consultants, Inc.,* 2000 WL 307400, at *2 (S.D.N.Y. March 23, 2000)).

Plaintiffs do not cite any case law supporting the proposition that corporations may negotiate settlements *pro se.* They merely revert to their previous argument that Judge Trager had discretion under Rule 55(b)(2) to approve the settlement. However, the plain language of Rule 55(b)(2) does not support this contention. *See* Fed.R.Civ.P. 55(b)(2). The proper course of action for plaintiffs was to ask

the court to "conduct such hearings or order such references as it deem[ed] necessary and proper," as Rule 55(b)(2) provides.

Plaintiffs' original application for a default judgment against Briggs was premised on the explicit ground that the corporation was not represented by counsel. Therefore, it is difficult to comprehend their current argument that Rosenstock was able to act for Briggs, when Briggs was found in 1993 to be without counsel, despite Rosenstock's presence.

This brings us to the third major infirmity with the 1997 judgment. The 1993 default judgment was procured by plaintiffs in part based on their argument that counsel could not represent both defendants Rosenstock and Genser, and Briggs, as there was a conflict of interest between the corporate officers and the corporation. Judge Trager explained that Rosenstock's interests were "completely adverse to that of Briggs, which had claims against him .... Rosenstock stood only to gain by confessing judgment on behalf of Briggs." *Grace XI*, at 14. Rosenstock was a shareholder and an officer, which further supports the notion that he should have been prohibited from also acting as a representative of Briggs. He had authority to make some decisions for Briggs, but not this one.

A judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure "only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Texlon Corp. v. Mfrs. Hanover Commercial Corp.*, 596 F.2d 1092, 1099 (2d Cir.1979) (quoting 11 Wright & Miller, Federal Practice and Procedure, § 2862 at 198 (1973)); *see also Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 39 (2d Cir.1989). In ordering the judgment following the stipulation, the district court acted in a manner inconsistent with due process of law. The court wrongly allowed Briggs, a corporation acting through Rosenstock, who was not a lawyer, to execute a stipulation of settlement while appearing *pro se*. Rosenstock was not acting in the interest of the corporation, but in his own when he agreed to the excessive judgment. Thus, Briggs was denied due process of law. The 1997 judgment is therefore void under Rule 60(b)(4) and is vacated.

The fourth basis comes under Rule 55(d) of the Federal Rules of Civil Procedure, which provides that in "all cases a judgment by default is subject to the limitations of Rule 54(c)." Rule 54(c) requires that a "judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Fed.R.Civ.P. 54(c). Judge Trager explained that the complaint here sought only equitable relief against Briggs—specifically that the merger be set aside or its terms reformed. We made a similar finding with regard to the same amended complaint:

> aside from a typical catchall paragraph that mentioned damages, the only relief requested by the amended complaint was equitable. On the claims against Briggs, it requested rescission of the merger or reformation of its terms; on the derivative claim on behalf of Briggs, it sought from the individual defendants an accounting and disgorgement of profits.

*Grace IX*, 228 F.3d at 51. Judge Trager concluded that New York BCL Section 623 requires an action to principally seek equitable relief, and Judge Levy also followed this logic in his dismissal of the claims against Genser. *See Grace XI*, at 17; *Grace VIII*, at 336. According to Judge Trager, awarding damages as part of the default judgment violates Rule 54(c) as

"different in kind" from "that prayed for in the demand for judgment." *Id.* at 16 (internal quotation marks omitted). However, because we have already found that the judgment is void, for the reasons discussed above, we need not reach this issue.

### VI. We decline to reach the Rule 60(b)(6) argument

Judge Trager found that the excessiveness of the judgment, "combined with its close resemblance to the sale price of the Briggs real property in 1990," demonstrated "collusion between Rosenstock and plaintiffs to the detriment of movants." *Grace XI,* at 18. This collusion, Judge Trager explained, was an extraordinary circumstance and an undue hardship under Rule 60(b)(6), and therefore, he argued, the judgment should be voided on that basis. Having affirmed the district court's decision on the Rule 60(b)(4) motion, we decline to address this issue.

### *Conclusion*

For the foregoing reasons, we affirm the order and memorandum of the district court in *Grace XI,* which granted nonparty movants' motion to vacate the judgment. As there is no judgment on which to collect, we must also affirm the two orders, *Grace XII* and *Grace XIII,* which dismissed plaintiffs' fraudulent conveyance actions.

### *Appendix*

Grace I

*Grace v. Rosenstock,* No. cv–85–2039 (E.D.N.Y. Aug. 14, 1986) (order granting plaintiffs' motion for class certification).

Grace II

*Grace v. Rosenstock,* No. 85–cv–2039 (E.D.N.Y. Jan. 19, 1989) (order of discontinuance entered for *Grace I* ).

Grace III

*Grace v. Rosenstock,* No. cv–85–2354 (E.D.N.Y. Mar. 29, 1993) (order holding that *Grace I* was discontinued in error and reopening the case).

Grace IV

*Grace v. Rosenstock,* No. 85–cv–2039 (E.D.N.Y. June 8, 1993) (default judgments entered against Briggs and BAC; neither corporation was represented by counsel).

Grace V

*Grace v. Rosenstock,* 169 F.R.D. 473, 480–86 (E.D.N.Y.1996) (order denying plaintiffs permission to add new defendants and assert new claims).

Grace VI

*Grace v. Rosenstock,* No. 85–cv–2039 (E.D.N.Y. Nov. 7, 1996) (order affirming *Grace V* in its entirety and denying plaintiffs leave to take an interlocutory appeal).

Grace VII

*Grace v. Rosenstock,* No. 85–cv–2039 (E.D.N.Y. Aug. 15, 1997) (judgment entered against Rosenstock and Briggs).

Grace VIII

*Grace v. Rosenstock,* 23 F.Supp.2d 326 (E.D.N.Y. Oct.29, 1998) (order dismissing the claims against Genser in their entirety).

Grace IX

*Grace v. Rosenstock,* 228 F.3d 40 (2d Cir.2000) (opinion affirming *Grace V* and *Grace VIII* ).

Grace X

*Grace v. Bank Leumi Trust Co.* (S.D.N.Y. Mar. 30, 2004), 2004 U.S. Dist. LEXIS 5294 (fraudulent conveyance action transferred from the Southern District to the Eastern District of New York).

Grace XI

*Grace v. Rosenstock,* No. 85–cv–2039 (E.D.N.Y. Oct. 4, 2004) (order vacating the default judgment against non-party movants).

Grace XII and Grace XIII

*Grace v. Bank Leumi,* No. 04–cv–0708 (E.D.N.Y. Oct. 6, 2004); *Grace v. Schwartz,* No. 04–cv–1622 (E.D.N.Y. Oct. 14, 2004) (orders dismissing the two fraudulent conveyance actions brought by plaintiffs against non-party movants).